UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| ALCIUS CALIXTE, | ) | CASE NO. 3:11 CV0230 |
| | ) | |
| Petitioner, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OF OPINION |
| | ) | AND ORDER |
| ERIC HOLDER, ATTORNEY | ) | |
| GENERAL, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

*Pro se* petitioner Alcius Calixte filed the above-captioned petition pursuant to 28 U.S.C. § 2241. Mr. Calixte was incarcerated at the Seneca County Jail in Tiffin, Ohio when he filed this petition against Attorney General Eric Holder, U.S. Immigration and Customs Enforcement Office District Director, Seneca County Sheriff Jeffrey Briggs, Sr., Seneca County Deputy Bill Eckelberry, Director of the Department of Homeland Security John Morton, and Secretary of Homeland Security Janet Napolitano as respondents. Since filing his Petition, Mr. Calixte has advised the Court that he is now incarcerated at the Bedford Heights County Jail in Ohio.

Petitioner claims he is in the official custody of the Immigration and Customs Enforcement(ICE). He alleges he has remained in ICE custody since April 2, 2010. He now asks this Court to assume jurisdiction over him and provide permanent injunctive relief "enjoining" the

respondents from detaining him further.

*Background*

Mr. Calixte, a citizen of Haiti, was serving in its Army under the regime of Jean-Claude Duvalier in 1979. His uncle, who was also serving in the Army as a Lieutenant, was arrested and imprisoned that year by Duvalier at Fort Dimanche Prison in Port-au-Prince.[1] Petitioner claims this put his entire family under close scrutiny. Fearing for his life, Mr. Calixte fled to the United States some time in the early 1980s. He alleges he became a lawful permanent resident on January 4, 1988.

In April 1990, Petitioner was living with his girlfriend in Florida. There he allegedly purchased a gun as protection from an ex-boyfriend of his companion. When Mr. Calixte returned to his apartment one day, he found his girlfriend had left with all of his belongings. In spite of filing a police report accusing her of stealing his furniture, the police arrested Mr. Calixte on charges he pointed a gun at the girlfriend. A conviction, sentence and imprisonment resulted from these charges.

Four days after Mr. Calixte's sentence in Florida ended, he claims ICE took him into

---

[1] Fort Dimanche was considered the epicenter of Haitian oppression.

> Built in the 1920's, it became under Francois Duvalier, and later under his son Jean-Claude, a political prison where men were beaten, electrocuted, dismembered, blinded and castrated. An estimated 3,000 people were locked inside and were never seen alive again. Others, ruined mentally and physically, were released after months or years to show the population what would happen to enemies of the state.

"MISSION TO HAITI: *The Auschwitz of Haiti for 3 Decades Gives Up the Secrets of its Dark Past,* p. 1, New York Times, Oct. 1, 1994

custody on April 22, 1993. He was transported to a immigration detention center in Louisiana. An Immigration Judge ordered his removal and deportation to Haiti on June 29, 1993. He claims an attempt to deport him occurred on July 21, 1993, but entry was refused based on his status as an "Enemy of the State of Raoul Cédras." He returned to Miami, Florida on the same plane that transported him to Haiti. In Miami, Mr. Calixte was released on parole.

Petitioner states he was contacted at his place of employment by the Internal Revenue Service (I.R.S.) on September 29, 2003 "for payment arrangements." Upon his arrival at the I.R.S. office, he was arrested by "border control customs" and placed in the custody of ICE. He claims he was charged with illegal re-entry and deported to Haiti on November 29, 2004. Petitioner states he remained in a Haitian prison until February 19, 2005, when he escaped.

On March 28, 2007, Mr. Calixte arrived in the United States on a boat from Haiti and was promptly arrested for illegal re-entry. He claims this charge was dismissed, but the July 21, 1993 charge of reentry of a deported alien in violation of 8 U.S.C. §1326A.F(A)(1) was revived. *See United States v. Calixte*, No. 0:07-cr-60091(S.D. Fl. filed Apr. 10, 2007); *see also* 8 U.S.C. §1231(a)(5).[2] After he entered a guilty plea to Count 1 of a Second Superseding Indictment, the court sentenced him on November 7, 2007 to 41 months in prison followed by two years of

---

[2]The statute provides:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

8 U.S.C. § 1231(5)(2011).

-3-

supervised release. While imprisoned on these charges, Mr. Calixte complains he was harassed by Mexican gangs at a private prison called "CCA at McRae, Georgia."[3] For reasons not detailed in the petition, the gang targeted Mr. Calixte who was placed in segregation for nine months at CI McRae for his own safety. Thereafter, he was transferred to a private prison in Youngstown, Ohio in March 2009. He was placed with two Mexican prisoners in a cell allegedly designed for only two inmates.

Mr. Calixte's was released from the Federal Correctional Institute in Elkton (F.C.I. Elkton) when his federal sentence ended on April 2, 2010. At that time he was taken into custody by ICE as a deportable alien and held at Seneca County Jail. Shortly after his arrival at Seneca, Petitioner was involved in a physical altercation with the prison staff.

The same month he was released to ICE, an indictment was filed in Tiffin Municipal Court charging Mr. Calixte with felonious assault against an officer at the jail. *State of Ohio v. Calixte*, No. CRA 1000427B (Tiff. Mun. Ct. filed Apr. 29, 2010). A $10,000 appearance bond was issued and Petitioner appeared in court April 30, 2010. He was referred for an "indigency evaluation," appointed an attorney and scheduled for a hearing before the court on May 7, 2010. At the hearing, Mr. Calixte executed a written waiver of preliminary hearing and agreed to have the matter bound over to the Seneca County Common Pleas Court. The court ordered Petitioner bound over to Seneca County Court, and that the terms and conditions of his bond continue.

Mr. Calixte's case transferred to Seneca County Court on May 19, 2010 where his bond was set at $50,000. *See State of Ohio v. Calixte*, No.10 CR 0084 (Sen. Cty. Ct. filed May 19, 2010). At his arraignment he entered a plea of not guilty, moved to dismiss the indictment and

---

[3]The Court presumes this is a reference to the Correctional Institution (CI) in McRae, Georgia, a privately-operated community corrections center.

reconsider bond. The motion to dismiss and reconsider bond were denied on September 28, 2010. Seven months after the Seneca County indictment, Petitioner filed a claim in this court against several Seneca County Jail employees under the Federal Torts Claim Act. *See Calixte v. Briggs, et al.*, No. 3:10cv2838 (N.D. Ohio filed Dec. 15, 2010)(J. Zouhary).

On December 27, 2010, Petitioner pleaded guilty to assault in violation of Ohio Revised Code § 2903.13(A)(C)(3). He was sentenced to the Ohio Department of Rehabilitation and Corrections for eight months, with credit for time served. The court issued a warrant to convey him to Lorain Correctional Institute on December 28, 2010. In the interim, Petitioner was appointed counsel on January 24, 2011 to assist in an appeal that is now pending. The following month, Mr. Calixte filed this habeas petition.

*Analysis*

Mr. Calixte's Petition before this Court asserts three grounds for relief; namely, that (1) his continued detention is unlawful and contravenes 8 U.S.C. § 1231(a)(6), (2) his substantive right to due process was violated because he was deprived of his right to be free from bodily restraint, and (3) his Fifth Amendment right to procedural due process was violated because ICE did not make decisions regarding his custody status in a neutral, impartial manner. Notwithstanding these stated grounds for relief, Mr. Calixte has sprinkled his Petition with exhaustive detail of events leading to his arrests, prosecution and detention. Related to these events, he makes sweeping requests for the Court to "take legal action against the United States" for alleged unlawful incarceration in 2003 and 2005 by ICE and equal protection violations allegedly based on disparate treatment in federal prison because of his immigrant status. Petitioner also makes numerous queries regarding his placement in a private prison and the assignment of Mexican cell mates after his

difficulties at CI McRae. He implies his treatment underscores his immigrant discrimination claim. Finally, he challenges his placement in Ohio when his criminal conviction was in Florida and his prosecution in Ohio when the officer he allegedly assaulted is not an employee of Seneca County. He seeks immediate release, injunctive relief, damages and attorney fees.

*28 U.S.C. § 2241*

A petition for a writ of habeas corpus under 28 U.S.C. § 2241 is limited to claims that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). An inmate's challenge to the manner in which a sentence is executed, rather than the validity of the sentence itself, may only be brought under 28 U.S.C. § 2241. *See Capaldi v. Pontesso*, 135 F.3d 1122, 1123 (6th Cir.1998). At the time Mr. Calixte filed this Petition, this Court had custody over his custodian. *See e.g., Vasquez v. Reno*, 233 F.3d 688, 693 (1st Cir. 2000) (alien seeking writ of habeas corpus contesting legality of his detention by Immigration and Naturalization Service (I.N.S.) was required to name as respondent individual having day-to-day control over facility in which he was being detained, not Attorney General, absent extraordinary circumstances). Petitioner's claims regarding his treatment at CI McRae and F.C.I. Elkton are dismissed because he is no longer in custody serving that sentence and the issues regarding the conditions of his confinement are not subject to habeas review. *See Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004). Issues regarding Mr. Calixte's challenge to his continued detention as a removable alien, however, are properly filed as a § 2241 petition in this Court. *See Wright v. United States Bd. of Parole*, 557 F.2d 74, 76-77 (6th Cir.1977).

*Alien Detention*

Section 241(a) governs the detention of aliens subject to final orders of removal. It

provides that, in general, the Attorney General is required to remove an alien within a 90-day "removal period," 8 U.S.C. § 1231(a)(1)(A); however, an alien found removable under 8 U.S.C. § 1227(a)(2), such as Petitioner, "may be detained beyond the removal period." 8 U.S.C. § 1231(a)(6). In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Court held that the INS cannot detain indefinitely an alien who is subject to a final order of removal. *Id.* at 690.[4] Rather, an alien's post-removal period of detention is limited to that "period reasonably necessary to bring about the alien's removal from the United States." *See id.* at 689. The Supreme Court went on to hold that it is presumptively reasonable to keep an alien subject to a final removal order in custody for a total of six months. *Id.* at 701.

The six-month period established in *Zadvydas* consists of the 90-day removal period (which typically begins to run, under § 1231(a)(1)(B), when the alien's order of removal becomes administratively final) plus an additional 90 days. *See Moallin v. Cangemi*, 427 F. Supp.2d 908, 914-15 (D. Minn.2006)(discussing *Zadvydas* ). Where there is no question about when the removal period begins to run, an alien challenging his confinement beyond six months from the beginning of the removal period bears the burden of "provid[ing] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future...." *Id.* at 701. Here, Mr. Calixte has not met that burden. More importantly, however, there is a question regarding the start of his period of removal.

Because the government may, for various reasons, be unable to remove an alien

---

[4]On March 1, 2003, the INS was abolished and its functions transferred to three bureaus within the Department of Homeland Security. *See* 6 U.S.C. § 291. The immigration enforcement functions of INS were transferred to the Bureau of Immigration and Customs Enforcement ("BICE") within the Department of Homeland Security. Because some case law predates March 2003, the Court will refer to the agency in existence at that time.

within 90 days of when an Immigration Judge first orders the alien's removal, § 1231 provides three different ways in which an alien's detention can be lawfully extended beyond the 90-day removal period. First, section 1231(a)(1)(B) provides that the 90-day removal period does not actually begin to run when an immigration judge orders an alien's removal. Instead, under § 1231(a)(1)(B):

> The [90-day] removal period begins on the latest of the following:
>
> > (i) The date the order of removal becomes administratively final.
> >
> > (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> >
> > (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

Second, even if the 90-day removal period has begun to run under § 1231(a)(1)(B), the period itself will be lengthened under § 1231(a)(1)(C) if the alien frustrates his removal in particular ways:

> The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

Third, and finally, if the removal period of 90 days---or, if extended under § 1231(a)(1)(C), the removal period of longer than 90 days---has run, the government has discretion under § 1231(a)(6) to detain certain aliens longer, as follows:

> An alien ordered removed who is inadmissible under [8 U.S.C. § 1182], removable under [8 U.S.C. §§ 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4)] or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

While Mr. Calixte challenges his continued detention, he has not argued he has been held beyond a reasonable period based on the relevant facts in his Petition. Moreover, even if he successfully made that argument, he has still failed his initial burden to establish he is otherwise eligible for release. *See Zadvydas*, 533 U.S. at 701(alien's burden to establish "no significant likelihood of removal in the foreseeable future").

The same statute that dictates the removal period also states that "the Attorney General may not remove an alien who is sentenced to imprisonment until the alien is released from imprisonment." 8 U.S.C. § 1231(a)(4). When Mr. Calixte pled guilty to assault in December 2010, he was no longer eligible for immediate removal. *Id.* Moreover, he was no longer exclusively in the custody of ICE. Thus, the facts alleged do not support Petitioner's claim that he has been in custody beyond a period that is presumptively unreasonable. Accordingly, this petition is dismissed without prejudice to any petition Mr. Calixte may file in the future regarding his exclusive detention by ICE.

Based on the foregoing, the petition is dismissed pursuant to 28 U.S.C. § 2243. The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A.GAUGHAN
UNITED STATES DISTRICT JUDGE

Dated: 5/26/11